In the Matter of ROBERT NEWELL, on Behalf of Himself and Others Similarly Situated, Appellant. against THE CITY OF BUFFALO et al., Respondents.

(Argued March 10, 1933; decided April 11, 1933.)

*William S. Rann* for appellant. The purpose of the present charter of the city of Buffalo is the protection of the executive and administrative departments against unnecessary interference by the Common Council. (*Pryor* v. *City of Rochester*, 166 N. Y. 548; *Kansas City* v. *Bacon*, 147 Mo. 259.) The salaries of the officers and employees of the city of Buffalo, when not specified in the charter itself, are determined or fixed by ordinance, and have always been so determined. (*Sauerbrunn* v. *Board of Education*, 150 App. Div. 407; 208 N. Y. 550; *Matter of Rudd* v. *Cropsey*, 159 App. Div. 275; Laws of 1837, ch. 392, § 9; Laws of 1853, ch. 230, tit. 3, § 8; Laws of 1870, ch. 519, tit. 3, § 4; Laws of 1891, ch. 105, § 17, subd. 1; Laws of 1914, ch. 217, § 46; *Buckbee* v. *Board of Education*, 115 App. Div. 366; 187 N. Y. 544; *Pitt* v. *Board of Education*, 216 N. Y. 304; *Matter of Bateman* v. *Mayor*, 247 N. Y. 250.)

*Charles L. Feldman, Corporation Counsel* (*John E. Livermore* of counsel), for respondents. The power to establish and control salaries of governmental officers and employees is generally speaking a legislative power. Statutes limiting or delegating that power or depriving the legislative body of jurisdiction to act without the consent of a non-member officer should be strictly construed and not extended by interpretation. (*Cochnower* v. *United States*, 248 U. S. 405; *People ex rel. Flatbush Gas Co.* v. *Coler*, 190 N. Y. 268.) The meaning of the word " fix " in relation to salaries depends upon the provisions of the particular statute in which it is used. (*Matter of Rudd* v. *Cropsey*, 159 App. Div. 275; *Buckbee* v. *Board of Education*, 115 App. Div. 366.)

CRANE, J. The petitioner is the chief bookkeeper of the Division of Accounting in the Department of Audit and Control in the city of Buffalo, whose salary for the

past six years has been $4,000 per annum. When the Mayor submitted the budget for city expenses to the Common Council, that body reduced the petitioner's salary to $3,500, without any written or oral recommendation of the Comptroller, as head of the petitioner's department, or of the Mayor. Other reductions of similar nature were made in the salary of other city employees. The petitioner thereupon made this application for a mandamus to compel the payment of his salary at the rate of $4,000 per annum, alleging that the Common Council had no power to reduce salaries without the request or consent of the head of the department wherein the particular employee was engaged.

The power of the Common Council over increases and decreases in salary is to be found in the charter of the city of Buffalo, in effect January 1, 1928 (Local Laws of 1927, No. 4), and we shall at once turn to the provisions in point.

The general scheme of the charter seems to be that the budget of administrative expenses for the ensuing year, submitted by the Mayor to the Common Council for approval, is subject to reduction by the latter body, but that all increases must be approved by other officials. Thus, we find in section 39 of the charter the following provisions: "At the first meeting of the council, after the submission to it by the mayor of the annual budget, the council shall proceed to a consideration thereof.

" The council may strike out or reduce items therein and may add thereto items of appropriation, provided that such additions are stated separately and distinctly from the original items of the budget and refer each to a single object or purpose.

" If no additions are made by the council, the budget, as passed by it, shall be deemed to have been adopted without any action of the mayor; if, however, the budget, as passed by the council, contains any such additions, it must be presented by the city clerk to the mayor on or

before April fifteenth for his consideration of such additions. If the mayor approves all the additions, he shall affix his signature to a statement thereof and return the budget and such statement to the city clerk. The budget, including the additions as part thereof, shall then be deemed to have been adopted. The mayor may object to any one or more of such added items and in such case shall append to the budget a statement of the added items to which he objects with the reasons for his objections and shall return the budget with his objections to the city clerk who shall present the same to the council at its next stated meeting. The council shall thereupon enter the objections upon its journal and proceed to reconsider the additions so objected to. If upon such reconsideration two-thirds of all the members constituting the council vote to approve such additions, or any of them, notwithstanding the objections of the mayor, the budget with the additions so approved, together with any additions not so objected to by the mayor, shall be deemed to have been adopted. If a budget with additions is not returned by the mayor to the city clerk with his objections within ten days after its presentation to him, it shall be deemed to have been adopted. "

The point to be noted at this time in reading these sections is that the Common Council apparently has plenary power over reductions, but, as to increases, more caution is taken. The Mayor must approve, or, if he disapprove, the Common Council must adopt the increase by a two-thirds vote. The same method is provided in section 41 for so-called emergency increases to the budget items of any department.

When this charter went into effect, January 1, 1928, all the existing employees were carried over into the new departments in similar positions and at the same salaries.

Section 75 and section 440 of the charter:— The latter provision reads as follows: " All appointive officers and employees in office or position when this act takes effect

shall continue as such until the office or position is abolished or the officer or employee is removed pursuant to law."

The petitioner was one of those in the employ of the city at the time this new charter went into effect.

The scheme of the old city government, or the employees under it, might not be sufficient or appropriate for the municipal work to be carried on under the new charter. With the growth of the city and the expansion of municipal activities, new positions would have to be created. The charter revisers naturally could see this and provided, in section 442 of the charter, for such conditions. Realizing, no doubt, that the party in power is frequently inclined or encouraged to increase its adherents by multiplying positions, a certain curb was placed upon the creation of new offices. Section 442 reads: " No new offices, except such as are provided for in this act, and no new positions shall be created, except with the approval of the council and upon the certification by the appointing power to the council that the creation of such new office or position is necessary for the proper conduct and administration of the department, court, board, commission or other city agency, in which said new office or position is sought to be created, and stating specifically the reasons therefor."

Note, again, in this connection, that the Common Council cannot create a new position except upon the certification by the appointing power that it is necessary for the work of the particular department. The new position requires the consent and approval of the head of the department. The Common Council cannot force additional help into places where they are not needed and not wanted. Note, again, that when a new position is created with the consent of the head of the department, section 442 says nothing about the salary to be paid the new appointee. We find this provided for in section 453, which applies to the salaries of all the city staff, with the exception of the elective officers and board members, who

are provided for in section 451 and section 452. Section 453 reads: " Other salaries. The council shall have exclusive power to fix the salary or compensation of every officer and employee of the city other than those enumerated in the two preceding sections. No such salary shall be hereafter raised nor fixed except upon the written recommendation of the head of the department or other · city agency and in the event that it is decided to hereafter raise or fix the salary of any head of department or city agency the written recommendation of the appointing power in respect thereto shall be required."

As we read this provision in connection with the other sections of the charter which I have quoted, it is clear that all the employees in office when the charter was adopted continued under the new charter at the same salary. Thereafter, the salary of any such employee could not be raised except upon the written recommendation of the head of the department wherein he was employed. If a new position were created, as provided for in section 442, upon the certification of the appointing power that such new position was necessary, the salary attaching to such new position must be fixed by the Common Council, also upon the written recommendation of the head of the particular department. This is the meaning of the word " fixed " in this section 453.

No limit is placed upon the power of the Common Council to reduce salaries. As with the budget, when submitted by the Mayor, so with the particular items in the budget relating to salaries;— no increase in the budget without the Mayor's consent, except as therein provided; no increase in salaries without the consent of the head of the department; no fixing of a salary for a new position without the approval of the head of the department requesting such position. And here the restrictions apparently end. Decreases were not specifically provided for or protected against. The drafters of this charter probably had in mind, due to past experiences, the welfare

and protection of the public, rather than the safe-guarding of employees, from the ubiquitous malcontent.

When any power, says section 13 of the charter, is conferred upon the city, and the method of exercise is not prescribed by the charter, the Council shall itself, if the power be legislative, exercise, and regulate the exercise of, such power.

The petitioner claims that the word " fixed," as used in section 453, above quoted, has reference to any change made by the Common Council, and that a reduction is a fixing of a salary. From this he argues that a reduction cannot be made without the recommendation of the head of his department. We are of opinion, as above stated, that this word " fixed " has reference to new positions, and would be quite inappropriate to express the meaning of all changes or a reduction. Had the Legislature intended that no increase or reduction in salary could be made without the approval of the head of a department, the natural and easy way to express it would have been to say that no " changes " shall be made without the recommendation of the head of the department. The section will not bear the interpretation given it by the appellant.

The petitioner also alleges that he is a veteran and could not be removed under the Civil Service Law (Cons. Laws, ch. 7) without a trial or an opportunity to be heard. These provisions, sections 21 and 22 of the Civil Service Law, however, do not apply to the reduction of salary made in good faith. (*People* v. *Prendergast*, 221 N. Y. 659.)

The order appealed from should be affirmed, without costs.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Order affirmed.